IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAULA J. STAHL,

    Plaintiff,

    v.                                              Civil Action No.2:07-CV-19

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

Plaintiff, Paula J. Stahl, (Claimant), filed her Complaint on March 5, 2007 seeking Judicial review pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed his Answer on August 23, 2007.[2] Claimant filed her Motion for Summary Judgment on September 18, 2007.[3] Commissioner filed his Motion for Summary Judgment on October 17, 2007.[4]

B.    The Pleadings

    1.    Plaintiff's Motion for Summary Judgement

    2.    Defendant's Brief In Support of Motion For Summary Judgment

---

[1] Docket No. 3.

[2] Docket No. 7.

[3] Docket No. 11.

[4] Docket No. 12.

C.  Recommendation

I recommend that:

1. Claimant's Motion for Summary Judgment be DENIED because the Claimant waived her right to counsel and was not prejudiced by the absence of counsel. Furthermore, although the ALJ did fail in his duty to obtain certain medical records, the failure did not prejudice Claimant.

2. Commissioner's Motion for Summary Judgment be GRANTED for the same reasons stated above.

## II. Facts

A.  Procedural History

Claimant filed an application for Supplemental Security Income Benefits and Disability Insurance Benefits on November 1, 2001, alleging disability since June 1, 2001. Her application was initially denied on February 5, 2002 and upon reconsideration on May 31, 2002. Claimant requested a hearing before an Administrative Law Judge, ["ALJ"], and received a hearing on May 6, 2003. On May 20, 2003, the ALJ issued a decision adverse to Claimant. Claimant requested review by the Appeals Council but was denied.

Claimant subsequently appealed the ALJ's decision to the Court. In January 2005, the Court vacated the ALJ's decision, remanded the case, and ordered the ALJ to consider Claimant's subjective symptoms of pain consistent with the two-part test set forth in Craig v.Charter, 76 F.3d 585 (4th Cir. 1996). On August 11, 2005, the ALJ held a supplemental hearing. On September 8, 2005, the ALJ issued a decision Claimant was not disabled. Claimant requested review by the Appeals Council but was denied. Claimant filed this action, which

proceeded as set forth above.

B.     Personal History

Claimant was 45-years-old on the date of the August 11, 2005 supplemental hearing before the ALJ.  Claimant is a college graduate and has prior work experience as an art teacher, hair stylist, and trail guide at a riding stable.

C.     Testimonial Evidence

Testimony was taken at the August 11, 2005 hearing.  The following portions of the testimony are relevant to the disposition of the case.

[EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE] (Tr. 363)

Q     Hearing's open in the case of Paula Stahl.  The hearing's being held on August 11, 2005 in Bridgeport, West Virginia.  Claimant is present, unrepresented.  Her son, Floyd Day is present.  Also Mr. Eugene Chuchman, a vocational expert.  Ms. Stahl, we've met before when Mr. Feror (Phonetic) was your representative.  Have you tried to get another representative?

A     No, sir.

Q     Okay, we'll proceed today because of those issues that are well-established about Mr. Feror.

                    *          *          *

Q     So you were seeing a chiropractor, Dr. Jones, for a while?

A     I've been seeing him since the disk herniated, and that's basically – my regular doctors and the neurosurgeons are unless I have surgery and you go for – then you for other alternative treatments and they've basically turned me over to him and to Dr. Chandron (Phonetic) who kind of handles the mental stress side of it, and he'll --

Q   Um-hum.

A   – send me to his case for that.

Q   I go to therapy and I keep checking in with him. I had a brand new letter – I think you have in your charts from him.

*   *   *

Q   Thank you so much. We'll close the hearing. Did you want a copy of this to make at the front desk, Ms. Stahl?

A   Please, very much.

A   All right. And, Barb, this letter from Ms. Stahl to Mr. Feror, I'm going to make that Exhibit 11E at hearing and it's two pages, so –

Q   I have this letter to me too if you need a copy of that.

A   No, it's just that where you say you're, you're capable of representing yourself and that's fine.

A   At least I'm here.

Q   What did you say?

A   At least I'm here.

D.   <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

• Drives into town once or twice per week. (Tr. 366)

• Takes care of son during the day. (Tr. 372)

- Guest lectured 14-15 times in past year. (Tr. 373)

- Spends 20 minutes per day on computer, sometimes two or three times per day. (Tr. 373)

- Cooks daily. (Tr. 374)

- Cooks foods such as soup. (Tr. 374)

- Writes letters some days. (Tr. 374)

- Walks a mile or a little more on good days. (Tr. 375)

- Home-schooled son last year. (Tr. 375)

- Takes son to 4H meetings down the road. (Tr. 376)

- Reads novels and materials on culture. (Tr. 376)

- Goes to library every now and then. (Tr. 376)

- Vacuums. (Tr. 376)

- Drove two hours from house to hearing. (Tr. 377)

- Paints portraits. (Tr. 378)

### III. The Motions for Summary Judgment

A.  Contentions of the Parties

Claimant contends the ALJ's decision must be vacated and the case remanded because the ALJ failed to obtain a knowing and intelligent waiver of her right to counsel at the supplemental hearing and failed to fully develop the medical record upon remand. Commissioner argues Claimant expressly waived her right to counsel and, in the event the Court finds there was no such waiver, Claimant was not prejudiced by the absence of counsel. Commissioner also argues Claimant's counsel, not the ALJ, bore the burden of submitting additional medical records.

B.  The Standards

1. <u>Summary Judgment</u>. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. <u>See</u>, 42 U.S.C. §§ 405(g), (h); <u>Adams v. Heckler</u>, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that he has a medically determinable impairment that is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(1), (3); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§

404.1508, 416.908.

5. <u>Disability Prior to Expiration of Insured Status- Burden</u>.  In order to receive disability insurance benefits, an applicant must establish that he was disabled before the expiration of his insured status.  <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(I), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6. <u>Social Security - Standard of Review</u>.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Secretary.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. <u>Social Security - Substantial Evidence - Defined</u>.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is

disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether he has a severe impairment, 3) whether his impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform his past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, he will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C. Discussion

   1. Whether the ALJ Erred by Failing to Obtain a Knowing and Intelligent Waiver of Claimant's Right to Counsel and Whether Claimant Was Prejudiced by Absence of Counsel.

Claimant contends the ALJ failed to obtain a knowing and intelligent waiver of her right to counsel at the supplemental hearing and that the absence of counsel prejudiced her because additional medical records were not brought to the ALJ's attention. Commissioner argues Claimant expressly waived her right to counsel and that Claimant was not prejudiced by the absence of counsel.

Claimant was represented by David Furrer at the first administrative hearing in 2003 and through the Court's remand in January 2005. (Tr. 250). On June 16, 2007 Claimant drafted and mailed to Mr. Furrer a letter terminating his appointment as counsel. (Tr. 351). Claimant appeared without counsel at the supplemental hearing on August 11, 2005. (Tr. 363). The issues before the Court are whether Claimant waived her right to counsel at the hearing and whether

8

she was prejudiced by the absence of counsel at the hearing.

The Supreme Court has not recognized a Constitutional right to counsel at Social Security hearings. Clark v. Schweiker, 652 F.2 399, 403 (5th Cir. 1981). However, a claimant does have a statutory right to counsel at such hearings. 42 U.S.C. § 406; 20 C.F.R. § 404.971. To protect such a right, a claimant must be adequately informed of her right to counsel and the availability of free counsel. Clark, 652 F.2d at 403. Regardless of the sufficiency of the waiver of counsel by a pro se claimant, the ALJ has a heightened duty to ensure the claimant receives a full and fair hearing as guaranteed by 20 C.F.R. §§ 404.927, 416.1441. Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980). Such a duty includes helping the claimant develop her case and ensuring all facts are fully explored. Id.; Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981). Remand is proper where the absence of counsel "created clear prejudice or unfairness to the claimant." Id. at 28. The Court finds Claimant was adequately informed of her right to counsel and knowingly waived her right to counsel. Although the ALJ should, in the future, undertake a more detailed inquiry into a claimant's knowledge of right to counsel, the ALJ's limited inquiry in the present case, (see Tr. 363, 382), was justified due to Claimant's clear demonstration of her understanding of her right to counsel. Claimant demonstrated her understanding by independently hiring and firing Mr. Furrer and by stating in her letter to Mr. Furur she understood she may hire a different attorney or represent herself. (Tr. 351). As stated in the letter, "There are many lawyers who do Social Security claims. I also have the legal right to represent myself, which I think I would be far better off doing than hiring someone who will decide not to show up for court, and then try to blame it on me." (Tr. 351).

Even if the Court were to find that Claimant did not knowingly waive her right to

9

counsel, the Court finds Claimant was not prejudiced by the absence of counsel. First, Claimant demonstrated a more than sufficient understanding of the proceedings by providing clear and responsive answers throughout the hearing and by submitting records at the hearing for the ALJ's review. (Tr. 370-71); see, in contrast, Walker, 642 F.2d at 714 [holding Claimant's rambling, barely non-coherent testimony evidenced prejudice resulting from absence of counsel.]. Additionally, Claimant was familiar with the proceedings, having attended and testified at the prior administrative hearing with the assistance of counsel. Finally, the ALJ fulfilled his duty to ensure Claimant's case was developed and all relevant facts were explored. See Sims v. Harris, 631 F.2d at 27; Walker, 642 F.2d at 714. The ALJ undertook a thorough analysis of the issue on remand, eliciting detailed testimony about Claimant's pain and its limitations on her lifestyle and work-related abilities. (Tr. 364-78). The ALJ also asked additional questions of the Vocational Expert, ["VE"], as counsel might have done had they been present. (Tr. 380). As discussed below, in the few instances the ALJ failed in his duty to develop the medical record, Claimant was not prejudiced as a result. For these reasons, the Court finds Claimant received a full and fair hearing and therefore was not prejudiced by the absence of counsel. See Sims, 631 F.2d at 27.

  2. Whether the ALJ Failed to Fully Develop the Record.

  Claimant contends the ALJ failed to fulfill his duty of obtaining updated medical records and exploring Claimant's concentration difficulties. Commissioner argues it was Claimant's current counsel's, not the ALJ's, responsibility to provide updated medical records to the Appeals Council.

  "The ALJ has a duty to explore all relevant facts and inquire into issues necessary for

adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986); see, also, Walker, 642 F.2d at 714. This is especially true in the case of a pro se claimant, where the ALJ has a "heightened duty of care and responsibility." Crider v. Harris, 624 F.2d 15, 16 (4th Cir. 1980). Although a claimant (and her representative) have a duty to diligently supply medical records to the SSA documenting the claimant's impairments and limitations[5], the Commissioner bears the responsibility of developing the claimant's complete medical history. 20 C.F.R. §§ 416.912(d), 404.1740(b); 20 C.F.R. § 416.912(d); see Smith v. Barnhart, 395 F. Supp. 2d 298, 302 (E.D.N.C. 2005). Therefore, where a claimant's medical records are "inadequate" to determine whether she is disabled, the ALJ must seek additional records and is obligated to re-contact claimant's treating physicians "and seek additional evidence or clarification" from them. 20 C.F.R. § 416.912(e)(1); Smith, 395 F. Supp. 2d 298 at 301. Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the claimant is prejudiced as a result. Walker, 642 F.2d at 714. Prejudice results where the Commissioner's decision "might reasonably have been different had the evidence been before [him] when the decision was rendered." King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). Evidentiary gaps that result in unfairness or clear prejudice require a remand. Brown v. Shalala, 44 F.3d 931, 935-36, (11th Cir. 1995); Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

---

[5] Commissioner argues Claimant's present counsel had the burden of providing the additional records to the Appeals Council. Although the Court disagrees with Commissioner, the Court observes neither Claimant nor her counsel submitted any additional documents to the Appeals Council or to the Court. Counsel was retained by Claimant on September 13, 2005 and the ALJ's decision did not become final (by way of the Appeals Council refusing to assume jurisdiction) until December 2006. Presumably, counsel had the opportunity to obtain any additional medical records and submit them to the Appeals Council or to the Court.

The Court evaluates each of Claimant's allegations separately, below, and holds remand is not warranted.

1)  Duty to Obtain Updated Records from Claimant's chiropractor, Dr. Jones: Claimant alleges the ALJ had a duty to obtain updated medical records from her chiropractor, Dr. Jones, because the last record on file from Dr. Jones is dated April 2003 and Claimant alleges she continued to see Dr. Jones into 2005.[6]  The Court agrees, finding that because there were no medical records related to Claimant's physical impairments for the period between September 2003 and September 2005 (the date of the ALJ's second determination),  the medical record was incomplete.  However, the Court finds Claimant was not prejudiced by the ALJ's failure to obtain the records.  In addition to the Claimant failing to demonstrate to the Court how Dr. Jones' "updated" opinion might have reasonably changed the ALJ's determination, (see Smith, 395 F. Supp. 2d at 305, wherein the claimant proffered to the court an actual report from the doctor in question), the Court finds the entirety of the record, including Claimant's Physical RFC Assessments and lifestyle evidence, makes it unlikely Dr. Jones' "updated" records would have changed the ALJ's determination.  (Tr. 135, 210, 299, 300, 366-378).

2) Duty to Obtain Updated Records from Dr. Rahman: Claimant alleges the ALJ had a duty to obtain updated records from Dr. Rahman because Dr. Rahman's report dated August 2003 indicated a two-month follow-up appointment.  (Tr. 356).  Claimant's argument is without merit, because the file clearly contains a report from Dr. Rahman dated October 2003, the date of

---

[6] Claimant, in her brief, does not specify the name of the chiropractor the ALJ must obtain records from; only that the ALJ must obtain updated records from the chiropractor Claimant "continued to see on a regular basis (Tr. 370)."  In reading the transcript from the supplemental hearing, it is apparent the chiropractor at issue is Dr. Jones.  (Tr. 370).

the alleged follow-up appointment. (Tr. 353).

  3) Duty to Obtain Updated Records from Dr. Toney: Claimant's alleges the ALJ had a duty to obtain updated medical records from Dr. Toney because the last record in the file from Dr. Toney was dated March 2002 and Claimant allegedly continued to see Dr. Toney into 2003. (See Tr. 181-194, 355). The Court finds the ALJ did have a duty to obtain additional records from Dr. Toney, because there was an apparent "evidentiary gap" created by the absence of Dr. Toney's records. See Brown, 44 F.3d at 935-36. As reported in Dr. Rahman's letter dated August 2003, Claimant was referred to Dr. Rahman by Dr. Toney, thereby putting the ALJ on notice that Dr. Toney may have seen Claimant as late as August 2003. (Tr. 355). Despite finding the ALJ failed to fulfill his duty, the Court finds Claimant was not prejudiced. First, unlike in Smith, Claimant has not proffered any evidence to the Court that Dr. Toney's "updated" medical opinion would have altered the ALJ's disability determination. See Smith, 395 F. Supp. 2d 298 at 305. Second, the Court finds the entirety of the record, including Claimant's Physical RFC Assessments and lifestyle evidence, makes it unlikely Dr. Jones' "updated" records would have altered the ALJ's determination. (See Tr. 135, 210, 366-378).

  4) Duty to Obtain Updated Records from Dr. Chandran: Claimant alleges the ALJ had a duty to obtain updated records from Dr. Chandran because Claimant mentioned at the supplemental hearing she receives treatment from Dr. Chandran and provided the ALJ with two letters from Dr. Chandran, dated March and April 2005. (Tr. 359, 360). The Court agrees with Claimant and finds the ALJ had a duty to obtain the complete set of records from Dr. Chandran rather than rely solely on the two letters provided by Claimant. However, the Court finds Claimant was not prejudiced by the ALJ's failure. The letters from Dr. Chandran, combined

13

with the evidence in the record of Claimant's Psychiatric Review Techniques (see Tr. 144, 195, reporting non-severe impairments and mild limitation) and lifestyle, suggests additional records from Dr. Chandran would have been consistent with Dr. Chandran's findings in March 2005 (that Claimant was making progress) and would not have changed the ALJ's determination.

   5) Duty to Ask Questions About Claimant's Impaired Concentration: Claimant alleges the ALJ had a duty to ask Claimant questions at the hearing about her concentration difficulties. Claimant argues the ALJ's duty arose out of Claimant's letter sent to her attorney, Mr. Furur, in which Claimant states she "cannot focus and concentrate consistently and at all times." (Tr. 351). The Court finds the ALJ did not have such a duty because there was no need to develop the record as to the issue of Claimant's concentration difficulties. Although Dr. Chandran concluded in April 2005 that Claimant's medical conditions "lead to severe problems with concentration/ organizational tasks/ poor memory," Claimant's lifestyle evidence (for example, lecturing for 30 minute periods, home-schooling her son) and her ability to draft a coherent letter to counsel and clearly answer the ALJ's questions contradict Dr. Chandran's conclusions. (Tr. 359, 351, 373, 375).

## IV. Recommendation

   For the foregoing reasons, I recommend that:

   1.   Claimant's Motion for Summary Judgment be DENIED because the Claimant waived her right to counsel and was not prejudiced by the absence of counsel. Furthermore, although the ALJ did fail in his duty to obtain certain medical records, such failure did not prejudice Claimant.

   2.   Commissioner's Motion for Summary Judgment be GRANTED for the same

reasons stated above.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: November 1, 2007

        /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE